# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

ROSA M. PEREZ, )
)
      **Plaintiff,** )
)
v. ) Case No. CIV-16-323-SPS
)
COMMISSIONER of the Social )
Security Administration, )
)
      **Defendant.** )

## OPINION AND ORDER

The claimant Rosa M. Perez requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on July 12, 1988, and was twenty-six years old at the time of the administrative hearing (Tr. 218, 222). She has a high school education, and has worked as a hostess and waitress (Tr. 79). The claimant alleges that she has been unable to work since September 15, 2009, due to depression, social anxiety, and ulcerative colitis (Tr. 258).

**Procedural History**

On January 17, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 218-27). Her applications were denied. ALJ J. Frederick Gatzke conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated November 21, 2014 (Tr. 24-37). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found the claimant retained the residual functional capacity ("RFC") to perform medium work as defined by 20 C.F.R. §§ 404.1567(c), 416.967(c) except that she was limited to no more

than incidental contact with the general public, and detailed, but not complex, work instructions (Tr. 29). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work in the national economy that she could perform, *i. e.*, janitor, laundry worker I, and hand packager (Tr. 35-37).

## Review

The claimant contends that the ALJ erred by failing to properly analyze: (i) the opinions of state agency psychologists James Sturgis, Ph.D., and Laura Lochner, Ph.D, and (ii) the opinions of state agency physicians Dr. C.K. Lee and Dr. Laurence Ligon. The Court agrees that the ALJ did not properly assess the opinions of Dr. Sturgis and Dr. Lochner.

The ALJ determined that the claimant had the severe impairments of ulcerative colitis, paranoid type schizophrenia, subchronic state; bipolar I disorder, single manic episode, severe, without psychotic features; depression; and anxiety (Tr. 26). He determined that the claimant's headaches, foot/ankle pain, right knee pain, hip pain, and mild left convexity scoliosis were non-severe (Tr. 27). The medical records as to the claimant's physical impairments reveal that she presented to the Medical Center of Southeastern Oklahoma Emergency Department ("MCSO") for gastrointestinal issues, including abdominal pain, bloody stool, nausea, and/or vomiting, on numerous occasions between June 2008 and January 2012 (Tr. 406-834). At each emergent care visit, the claimant was treated with varying combinations of anti-nausea, steroid, pain, and/or gut

anti-spasm medications, and was discharged in improved or stable condition (Tr. 415, 506, 526, 568, 598, 613-14, 803).

As to the claimant's mental health, she presented to MCSO on February 16, 2009, and reported anxiety that began three weeks prior (Tr. 456-63). Dr. Kinion Whittington observed that the claimant was anxious and tearful, and diagnosed her with an anxiety attack with history of anxiety/panic disorder (Tr. 456-63). At her visit to MCSO on November 11, 2009, the claimant stated that her abdominal pain causes her panic attacks (Tr. 507). Additionally, the claimant was noted to appear mildly anxious at her MCSO visit in June 2010, and moderately anxious at visits in December 2010 and March 2011 (Tr. 566, 597, 609). Dr. Sureddi treated the claimant for anxiety and depression from January 2011 through August 2011, and in July 2012. She noted the claimant's bipolar disorder was improved with medication on August 16, 2011 (Tr. 384-93, 1024-25).

On August 10, 2011, the claimant presented to MCSO and reported numerous falls over the previous two days, multiple body injuries, dizziness, and hallucinations (Tr. 623-79). Dorothy Phelps, L.P.C., conducted a mental status examination of the claimant during her admission, and noted that she appeared slightly anxious, and had a depressed mood and congruent affect (Tr. 628). She also noted the claimant appeared to be at least of average intelligence, had fair insight and judgment, adequate abstract thinking, and adequate calculation ability (Tr. 628). Ms. Phelps indicated it was difficult to assess the claimant's mental status due to her severe physical injuries (Tr. 627-29). The claimant was discharged in stable condition on August 14, 2011, and her discharge diagnoses included, *inter alia*,

altered mental status with hallucinations and delusions at the time of admission, and severe depression with suicidal ideation (Tr. 623).

The claimant received inpatient psychiatric care for acute psychosis at Texas Health Presbyterian Hospital from June 18, 2012, through June 27, 2012, after reporting visual hallucinations and delusions (Tr. 967-80). A mental status examination revealed she was disheveled, acted as though she had difficulty ambulating, and had a child-like demeanor, poor insight, and poor judgment (Tr. 970). Upon discharge, she was considered medically and clinically stable, with a diagnosis of psychosis, not otherwise specified (Tr. 967).

State reviewing physician Dr. Sturgis completed a Psychiatric Review Technique form on July 25, 2012 (Tr. 1006-19). He found that the claimant's mental impairments consisted of a schizophrenic, paranoid, or other psychotic disorder as evidenced by delusions or hallucinations, and anxiety (Tr. 1008, 1011). As a result, Dr. Sturgis found that claimant was mildly limited in her ability to maintain concentration, persistence, or pace, moderately limited in her activities of daily living, and in maintaining social functioning, and had three episodes of decompensation, each of extended duration (Tr. 1016). Dr. Sturgis also completed a Mental RFC Assessment and found that claimant was markedly limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public (Tr. 1002-05). In his written comments, Dr. Sturgis indicated that claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, could not relate to the general public, and could adapt to a work

situation (Tr. 1004). Dr. Lochner affirmed Dr. Sturgis's opinion on October 30, 2012, noting the claimant did not allege a change in her mental health or any new mental health problems on her updated disability report, as well as Dr. Surredi's August 2012 treatment note indicating the claimant improved with anti-psychotic medication (Tr. 1026).

State agency physician Dr. C.K. Lee reviewed the record and completed a physical RFC assessment on May 23, 2012, finding that the claimant could perform the full range of light work (Tr. 862-69). Dr. Ligon affirmed Dr. Lee's opinion on November 6, 2012 (Tr. 1032).

The claimant argues that the ALJ failed to properly analyze the opinions of Dr. Sturgis and Dr. Lochner by rejecting without explanation their determination that the claimant could relate to supervisors and peers on a superficial work basis. Social Security Ruling 96–6p indicates that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4 (July 2, 1996). These opinions are to be treated as medical opinions from non-examining sources. *Id.* at *2. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the opinion in his decision. *Id. See also Valdez v. Barnhart,* 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii). Here, the ALJ indicated that he adopted the state agency psychologists' opinion that the claimant was limited to simple

mental tasks, but failed to explain how the RFC accounted for her limitation of only relating to supervisors and peers on a superficial work basis (Tr. 29, 34).

The government asserts that the ALJ's oversight is harmless error because the jobs the vocational expert ("VE") identified were consistent with the omitted interaction limitation. In response to questioning about a hypothetical individual who could perform work with the associated RFC, the VE identified the jobs of janitor, DICOT § 389.683-010; laundry worker I, DICOT § 361.684-014; and hand packager, DICOT § 920.587-018. All three occupations have job descriptions that indicate interaction with supervisors is "not significant," *see* DICOT §§ 389.683-010, 361.684-014, 920.587-018. However, neither the job descriptions nor the ALJ's hypothetical presented to the VE addresses the claimant's interaction with peers/co-workers, thus the Commissioner's post-hoc rationalization will not be adopted. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted]. "[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir.1999). Furthermore, "[t]he [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." Soc. Sec. R. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added].

Accordingly, the Court concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for proper analysis of the medical opinions of record. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of March, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**